EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
EMILIO ALVARADO, acusado y apelante.

No. 2678.—*Visto:* Marzo 17, 1926. *Resuelto:* Marzo 31, 1926.

APELACIÓN Y ERROR — REVISIÓN — ERRORES NO PERJUDICIALES — REPREGUNTAS A TESTIGOS—RESOLUCIONES SOBRE LAS MISMAS.—Constituye error perjudicial al acusado el privarle de la oportunidad de demostrar, mediante repregunta, la existencia de un motivo de apasionamiento o parcialidad por parte de un testigo, y más aún cuando la repregunta a tal efecto—hecha para conocer el alcance de la animosidad del testigo y la credibilidad que ha de darse a su declaración—está dentro del alcance del interrogatorio directo.

SENTENCIA de *Angel Acosta Quintero,* J. (Ponce), condenando al acusado por delito de portar armas prohibidas, sin costas. *Revocada y devuelto el caso.*

*Leopoldo Tormes,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El apelante fue declarado culpable por portar un cuchillo y alega que:

"1º. La Corte cometió error al no permitir que la defensa repreguntara al testigo Antonio Nieves sobre sus relaciones con el acusado, a fin de determinar los móviles o interés de la declaración de dicho testigo.

"2º. La sentencia en este caso es contraria a las pruebas y a derecho."

De la declaración de Antonio Nieves citamos lo siguiente:

"P. ¿A usted le ocurrió algo con este acusado?—R. Sí, señor.—P. ¿Qué fué lo que le ocurrió?—R. Serían las dos y media de la noche; yo estaba ya en cuerpo de camiseta para acostarme y estando yo parado bajo el foco, vino este señor a dormir y empezó a abrir la puerta, pero volvió a buscarme la garata y al yo contestárselo,

abrió la puerta y bajó y me desafió para una vega y yo no quise ir, y entonces, cuando regresa, que no quise ir, me embistió con el cuchillo.—P. ¿Qué cuchillo?—R. Un cuchillo así de largo.—P. ¿De qué color?—R. Tiene el cabo como colorado.—P. ¿Es pequeño o grande?—R. Así es, con cabo y todo. — P. ¿Tiene o no forma de puñal?—R. No tiene forma de puñal, y al embestirme, a la embestida, y en la carrera que él llevaba detrás de mí, se presentó un señor que está de sereno allí, y entonces él arrancó a correr y yo me fuí quedando allí.—P. El cuchillo, ¿dónde fué a parar?—R. El cuchillo lo encontraron en la casa de él.—P. ¿En la casa de él o en la calle?—R. Dentro del patio; al pie de la escalera.—P. ¿Allí hay patio?—R. Así está el patio.—P. ¿Cómo está situada esa casa?—R. La casa está al lado mío y está cercada de zinc.—P. ¿El patio de quién era?—R. Pertenece a la casa de este acusado.—P. ¿En ese patio hay muchas casas?—R. Una sola, la de él.—P. ¿Quién llevó ese cuchillo allí?—R. Tengo que suponer que haya sido él mismo.— P. Abogado: Que se elimine eso. — Juez: Sí, que se elimine.—R. El me corría a mí con él; yo lo conozco como de él.—P. Mire a ver este cuchillo.—R. Sí, señor.—P. ¿A esta forma usted no le llama de puñal?—R. No, señor; yo creo que es de puñal cuando tiene dos filos.—Abogado: P. ¿Usted era amigo de este hombre o había tenido alguna riña con él?—Fiscal: Eso no es de este caso.—Juez: Aquí estamos investigando el caso este de portar armas. La Corte sostiene al Fiscal. — Abogado: Tomo excepción con el mayor respeto.''

El artículo 21 de la Ley de Evidencia es como sigue:

''Se presume que un testigo dice la verdad. Esta presunción, sin embargo, puede ser rechazada, por la forma en que declare, por el carácter de su declaración o por evidencia que afecte su veracidad, honradez, integridad, o móviles, o por evidencia contradictoria.''

Parece que Nieves se refirió a una riña anterior. Al aludir al acusado dijo ''volvió a buscarme la garata.'' Los demás actos imputados al acusado por este testigo y referidos en el interrogatorio directo también parecen indicar algún incidente previo como explicación lógica y probable, si no la única, de lo que de otro modo parecería ser una conducta muy sorprendente y anormal. Por tanto, la primera pregunta hecha en el interrogatorio de repreguntas, hubiera sido enteramente pertinente por estar dentro del alcance

del interrogatorio directo, sin tener en cuenta el elemento de parcialidad y el derecho del acusado a impugnar al testigo en la forma ordinaria si no en verdad por el único medio permisible.

Según el peso de las autoridades, el juez sentenciador tiene cierta discreción respecto a la cuestión de limitar tal interrogatorio de repreguntas y creemos que debe circunscribirlo a límites razonables. Pero no conocemos ningún caso en que se llegue a decir que el acusado en un caso criminal puede ser privado de toda oportunidad de demostrar la existencia de algún motivo de apasionamiento o parcialidad por parte del perjudicado.

En el tomo 2 de Wigmore on Evidence, página 338, sec. 951, encontramos la siguiente declaración:

"Sec. 951.—Detalles de una riña en interrogatorio de repreguntas. Es claro que al determinar el estado de ánimo teniendo en cuenta el hecho de una riña, u otras circunstancias, el mero hecho solo, tiene poca significación; sin un conocimiento de los detalles no podemos conocer bien el alcance de la animosidad y la credibilidad que ha de darse a la declaración. Esta necesidad de precisar detalles está reconocida por algunas cortes sin limitación. Pero puede resultar inconveniente de dos modos: (1) las preguntas detalladas, las negativas, y las explicaciones, están sujetas a una multiplicidad y confusión de las cuestiones en controversia; (2) los hechos detallados de la disputa pueden envolver un prejuicio respecto al carácter del testigo, o de su opositor, lo cual sería conveniente excluir del caso. Desde este punto de vista, debe trazarse cierta línea de limitación, y hacerse un esfuerzo por evitar estos dos inconvenientes. De conformidad con esto, se ha resuelto generalmente que los detalles de la riña, u otra conducta, pueden ser excluídos a discreción de la corte sentenciadora."

Carlos Torres, el sereno, dice que el acusado marchaba para encima de Nieves con un cuchillo en la mano cuando el testigo intervino y sostuvo al acusado hasta que llegó al sitio un policía. Este testigo también manifiesta que él recibió un golpe de Alvarado al tratar de reconvenirle. No pudo encontrarse ningún arma por el policía o cualquiera

de los testigos citados últimamente al tiempo de verificarse el arresto aunque se hizo una búsqueda.

Alvarado fué llevado al cuartel de la policía volviendo luego el policía a buscar el cuchillo.  Su declaración es más vaga y menos satisfactoria que la de cualquier otro testigo.

Alvarado insiste en que el cuchillo presentado en el juicio pertenecía a Nieves, quien por lo menos tuvo tanta oportunidad como la que se le ofreció a Alvarado para dejar el cuchillo donde se dice que se encontró media hora o una hora después del arresto de Alvarado.

En tales circunstancias no podemos decir que el error alegado en primer término por el apelante no era perjudicial.

*Debe revocarse la sentencia apelada y devolverse el caso para ulteriores procedimientos no incompatibles con la opinión.*